IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Henry J. Galloway, #236967, | ) | C/A No. 5:17-00878-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden David Dunlap, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Henry J. Galloway ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 17, 18. On July 5, 2017, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 19. On July 14, 2017, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 22, and on July 14, 2017, Petitioner filed a "Motion to Vacate the Case in its Entirety based upon charges already dismissed," ECF No. 23. There, Petitioner argues that because a trespassing charge was dismissed, the State did not have jurisdiction to charge him with safecracking, and therefore, he should be immediately released. *Id.* Respondent filed a Response to Petitioner's Motion to Vacate on July 28, 2017. ECF No. 24. Having carefully considered the parties' submissions and the record in this case, the undersigned

recommends that Respondent's Motion for Summary Judgment, ECF No. 18, **be granted**, and Petitioner's Motion to Vacate, ECF No. 24, **be denied**.

I.       Background

Petitioner is currently incarcerated in the Kershaw Correctional Institution ("KCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2010, Petitioner was indicted at the December term of the Anderson County Grand Jury for second-degree burglary (2010-GS-04-2543) and one count of burglary/safecracking (2010-GS-04-2544). App. 253-56.[1] Attorney Aaron Angell represented Petitioner in a jury trial that convened on March 12, 2012, and Assistant Solicitors Joshua Allen and Catherine T. Huey represented the State. App. 1. Petitioner was tried before the Honorable R. Lawton McIntosh. *Id.* After the trial, the jury found Petitioner guilty of both charges. App. 162-63. Judge McIntosh sentenced Petitioner to concurrent sentences of 15-years imprisonment for the convictions. App. 168.

Appellate Defender Robert M. Pachak represented Petitioner in an *Anders*[2] appeal and briefed the following issue: "Whether the trial court erred in refusing to grant a directed verdict to the charge of safecracking when the object broken into was not a safe?" App. 170-181. On March 13, 2013, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted appellate counsel's motion to be relieved. App. 182-83. The Remittitur was filed on April 5, 2013. ECF No. 17-4.

II.      Procedural History

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF No. 17-1 in this habeas matter.

[2] *See Anders v. California*, 386 U.S. 738 (1967).

Petitioner filed an application for Post-Conviction Relief ("PCR") on July 9, 2013 (2013-CP-04-01628). App. 184-203. Petitioner asserted the following allegations, recited verbatim, regarding his claims:

A1)  Ineffective Assistant of Counsel.
A2)  Trial Counsel's Actions
A3)  Double Jeopardy

B1)  Directed Verdict
B2)  Failure to make the required contemporaneous objection
B3)  Dominion and Control

C1)  Trial Court Errored
C2)  Proof of one element
C3)  Reasonable Probability

App. 193. Assistant Attorney General J. Walt Whitmire filed a Return on behalf of the State on December 31, 2013. App. 202-08. A PCR hearing convened on February 18, 2014, before the Honorable J. Cordell Maddox, Jr. App. 209-241. Petitioner was present and represented by Attorney Hugh W. Welborn; Attorney Whitmire appeared on behalf of the State. *Id.* Petitioner and trial counsel Angell testified during the hearing. *Id.* In an Order filed July 16, 2015, the PCR court denied Petitioner's PCR Application in full, based on the following allegations and making the following findings of fact and conclusions of law:

### ALLEGATIONS

In his current Application, Applicant alleges that he is being held in custody unlawfully for the following reasons:

1.  Ineffective Assistance of Counsel:
    a. failure to interview Henry Gates as a potential trial witness;
    b. failure to consult an expert in safe cracking;
    c. failure to investigate the State's lack of forensic evidence limited to fingerprints and D.N.A.;
    d. failure to inform Applicant of the State's plea offer;
    e. failure to object to the Trial Judge's decision to revoke Applicant's bond;
    f. failure to continue the representation when Applicant instructed counsel that he desired to have counsel relieved during the middle of trial;

g. failure to make a directed verdict motion;
h. failure to make a double jeopardy motion;
i. failure to request a jury instruction on mere presence.

. . . .

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility, and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).

As a matter of general impression, this Court finds Applicant's action is lacking in credibility as a matter of global concern. Applicant makes numerous allegations that are entirely supported by his incredible testimony. The State's case against Applicant was simple and straight forward. Applicant found himself in a grave predicament to the common burglar: he got caught in the heist. This Court notes that Applicant makes numerous allegations that counsel failed to investigate matters that would have presumably been instrumental in contesting guilt; yet Applicant also opines that he would have accepted a plea. He simply cannot have it both ways. See State v. Barnes, Op No. No. 2014-001966 (S.C. Ct. filed July 1, 2015) (Toal, C.J. dissenting) (Respondent's conduct here should be examined for what it is: an effort to manipulate the system and pollute the administration of justice). Furthermore, this Court finds Applicant's other allegations constitute one frivolity layered upon additional frivolity. In comparison, this Court finds counsel's testimony to be compelling. His testimony was the product of clear diligence and preparation as it evidenced his full attention to the PCR process. This Court finds counsel's PCR testimony further evidenced the competency of his representation concerning the allegations at issue.

### Effective Assistance of Counsel

In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C.

441, 334 S.E.2d 813 (1985). The applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625 (citing Strickland). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625.

### A.

This Court finds Applicant entirely failed to meet his burden of proof, let alone his burden of production on the following three allegations: (a) ineffective assistance of counsel -- failure to interview Henry Gates as a potential trial witness: (b) ineffective assistance of counsel -- failure to consult an expert in safe cracking: ineffective assistance of counsel; (c) ineffective assistance of counsel -- failure to investigate the State's lack of forensic evidence limited to fingerprints and D.N.A.

This Court has stated previously that criminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." Edwards v. State, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011) (internal citation omitted).

This Court finds counsel's testimony dispositive. Regardless, Applicant has failed to produce any relevant and credible testimony or evidence concerning these three allegations. See Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998) ("failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result"). Therefore, these allegations is readily denied and dismissed with prejudice.

### B.

This Court finds Applicant has failed to meet his burden to prove: (d) ineffective assistance of counsel -- failure to inform Applicant of the State's plea offer.

"The Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected. That right applies to "all 'critical' stages of the criminal proceedings." Missouri v. Frye, — U.S. — , —, 132 S.Ct. 1399, 1402 (2012). "The question is whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and

conditions that may result in a lesser sentence, a conviction on lesser charges, or both." Id., — U.S. at —, 132 S.Ct. at at 1408.

In light of counsel's compelling testimony that he informed Applicant of the offer and advised Applicant on its terms and conditions among others things, Applicant has produced no credible evidence in rebuttal. This Court notes that Applicant's current post-hoc PCR representations appear to be the product of buyer's remorse post the return of the guilty verdicts. In light of this Court's credibility finding, further analysis is unnecessary. Therefore, this allegation is denied and dismissed with prejudice.

## C.

This Court finds Applicant's allegation (e) ineffective assistance of counsel -- failure to object to the Trial Judge's decision to revoke Applicant's bond is entirely without merit. Judge Mcintosh made a sound pre-trial ruling that as a matter of course is virtually per se unchallengeable on either direct appeal or in this forum. Counsel is simply under no duty to make futile objections. Therefore, this allegation is denied and dismissed with prejudice.

Similarly, this Court finds Applicant's allegation (f) ineffective assistance of counsel -- failure to continue the representation when Applicant instructed counsel that he desired to have counsel relieved during the middle of trial is without merit.

This Court finds that Applicant had no valid basis to even make a prima facie showing that a motion to have counsel relieved held merit. Far too commonly seen in this forum, applicant's proceed on the general on this general allegation [sic] in light of adverse pre-trial ruling. Applicant is entitled to competent representation; yet, that right certainly does not extend to the appointment of an applicant's choosing. Applicant notably did not offer credible testimony or evidence that he wished to proceed pro se at any point during representation. This Court further notes that counsel rendered exceptional representation on the matters currently at issue. Therefore, this allegation is denied and dismissed with prejudice.

## D.

This Court finds that Applicant's allegation: (h) ineffective assistance of counsel --failure to make a double jeopardy objection is without merit.

"Where an act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180 (1932).

This Court agrees with counsel that Applicant's convictions do not constitute a double jeopardy violation. The offenses do not share identical elements. <u>See</u> S.C. Code Ann. § 16-11 312 (2010); <u>See also</u> <u>Gibson v. State</u>, 257 S.C. 230, 233, 185 S.E.2d 373, 374 (1971). Therefore, this allegation is denied and dismissed with prejudice.

This Court summarily rejects Applicant's allegation <u>(g) ineffective assistance of counsel: failure to make a directed verdict motion</u> where the transcript shows that counsel clearly made the objection and preserved the matter for appellate review. <u>See</u> <u>McElvain v. Lewis</u>, 283 F.Supp.2d 1104, 1125 (C.D. Cal. 2003) (There is no ineffectiveness for failure to object where the record shows an objection). Therefore, this allegation is denied and dismissed with prejudice.

This Court finds Applicant failed to meet his burden to prove his allegation: <u>(i) ineffective assistance of counsel - failure to request a jury instruction on mere presence</u>.

The defendant is entitled to a mere presence charge if the evidence supports it. <u>State v. Franklin</u>, 299 S.C. 133, 141, 382 S.E.2d 911, 915 (1989). The failure to charge "mere presence" may constitute reversible error. <u>State v. Lee</u>, 298 S.C. 298, 364, 380 S.E.2d 834, 835 (1989).

> 'Mere presence' is generally applicable in two circumstances. First, in instances where there is some doubt over whether a person is guilty of a crime by virtue of accomplice liability, the trial court may be required to instruct the jury that a person must personally commit the crime or be present at the scene of the crime intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act. Secondly, mere presence is generally an issue where the state attempts to establish the defendant's possession of contraband because the defendant is present where the contraband is found. In such cases, the trial court may be required to charge the jury that the defendant's mere presence near the contraband does not establish possession.

<u>State v. James</u>, 386 S.C. 650, 653-54, 689 S.E.2d 643, 645 (Ct. App. 2010).

This Court finds Applicant failed to show that a mere presence instruction would have called into question the outcome of his trial. This Court agrees with counsel and finds that State's evidence of Applicant's guilt to be overwhelming as he was caught in the act. Therefore, this allegation is denied and dismissed with prejudice.

## ALL OTHER ALLEGATIONS

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this order, the Court finds Applicant failed to present any evidence regarding such allegations. Accordingly, the Court finds Applicant has abandoned any such allegations.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post-conviction relief must be denied and dismissed is with prejudice.

This Court notes that that Applicant must file and serve a notice of appeal within thirty days from the receipt by counsel of written notice of entry of judgment to secure the appropriate appellate review. <u>See</u> Rule 203, SCACR. Pursuant to <u>Austin v. State</u>, 305 S.C. 453 (1991), an Applicant has a right to an appellate counsel's assistance in seeking review of the denial of post conviction relief. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, post-conviction relief counsel must serve and file a Notice of Appeal on the Applicant's behalf. Applicant is directed to South Carolina Appellate Court Rule 243 for appropriate procedures for appeal.

**IT IS THEREFORE ORDERED:**

1. That the Application for Post-Conviction Relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the Respondent.

App. 242-252. Appellate Defender Benjamin John Tripp filed a *Johnson*[3] Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 17-6. Therein, Petitioner presented the following issue for review: "Whether the record supports the PCR court's ruling that Petitioner's Sixth Amendment right to effective assistance of counsel was not violated when Petitioner testified that he told trial counsel to accept a favorable plea offer on his behalf and where neither trial counsel's testimony nor any other evidence showed that trial counsel did relay the acceptance." *Id.* at 3. Petitioner filed a pro se Response to the Petition for Certiorari on March 23, 2016. ECF No. 17-8. The South Carolina Supreme Court denied the petition and granted counsel's request

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

to withdraw. ECF No. 17-9. On February 28, 2017, the supreme court issued the Remittitur. ECF

No. 17-10. This federal habeas Petition followed and was filed on April 3, 2017. ECF No. 1.

III.     Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus,

quoted verbatim:

> GROUND ONE: Ineffective Assistance of Counsel.
> Supporting Facts: [a] Counsel failed to present favorable witnesses at trial-[b] failed to consult a safe cracking expert-[c] Failed to request a mere presence jury charge-[d] failed to adequately investigate case-[e] failed to object to certain comments-[f] failed to object to double jeopardy [g] counsel failed to object to the State showing the video for the third time to the jury. ECF No. 1 at 5.
>
> GROUND TWO: DOUBLE JEOPARDY.
> Supporting Facts: The charge of burglary second degree is a felony, and burglary safe cracking is a felony, my trial court counsel and trial court judge violated the double jeopardy provisions of both the federal and our state constitution when the courts convicted/sentenced Petitioner for the underlying offenses of burglary and safecracking.  ECF No. 1 at 7.
>
> GROUND THREE: Trial judge should have granted the Motion for a Directed Verdict on charge of safecracking.
> Supporting Facts: Randall Moon testified that he worked at Moon's Tile, and money was stolen out of their "filing cabinet." It was a locking "filing cabinet" that they used as a safe. A wooden "filing cabinet" is not a safe. The statute is overbroad and does not give one any notice of what a safe is. ECF No. 1 at 8.
>
> GROUND FOUR: Trial court judge interjected his personal opinion and stereotyped Petitioner.
> Supporting Facts: At all times during proceeding, trial judge failed to make finding of facts and conclusions of law as required pursuant to S.C. Code Ann § 17-27-80 (1985). And stereotyped Petitioner at all times showing a complete miscarriage of justice. ECF No. 1 at 10.

Petitioner attached a 25-page Memorandum of Law in Support of 28 U.S.C. § 2254 to his

Petition. ECF No. 1-2. Nine pages of this Memorandum contain Petitioner's arguments, and the

remaining pages contain portions of the criminal-trial transcript and the South Carolina Supreme Court's denial of the Petition for Writ of Certiorari. *See id.*

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Habeas Corpus Standard of Review

1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a. Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or

erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review

and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural

bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.  Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)  (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644

F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and

prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

       3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

A. Procedurally-Barred Grounds

As an initial matter, Respondent maintains "Petitioner's seventh claim in Ground One, his second claim in Ground Two, and his claims in Grounds Three and Four were all procedurally defaulted in state court and are barred from federal habeas review." ECF No. 17 at 18. In his Response to the Motion for Summary Judgment, Petitioner argues his trial counsel erred in "failing to file a Rule 59(e) Motion upon reading over judge's order and seeing he did not rule on each issue presented." ECF No. 22 at 7. The undersigned will address each potentially procedurally-barred issue in turn.

1. Ground One (g); video display to jury three times

In Petitioner's seventh claim in Ground One, he maintains his trial counsel was ineffective in failing to object to the State showing a video for the third time to the jury. ECF No. 1 at 5. In Petitioner's PCR Application, he maintains "[t]here was no objection to the showing of the video for the [third] time to the jury, this was prejudic[ial] to my case." App. 197. This issue was also raised during the PCR hearing during the Attorney General's introduction of the case. App. 211-212. Specifically, the State indicated that one of the issues being presented was trial counsel's "failure to object to the jury viewing State's evidence on more than one occasion during the course of trial. . . ." App. 212. Other than the State's initial statement, the video issue was not raised again during the PCR hearing, nor was the video raised in the order denying PCR. App. 213-252. Later, during his PCR appeal, the video issue was not raised in the *Johnson* Petition, ECF No. 17-6, or Petitioner's pro se Response to the *Johnson* Petition, ECF No. 17-8. Therefore, the undersigned finds that Ground One (g), has not been properly preserved for review because Petitioner failed to raise the issue to the highest South Carolina appellate court. *See, e.g. Pickard v. Connor*, 404 U.S. 270, 278 (1971) ("We simply hold that the

substance of a federal habeas corpus claim must first be presented to the state courts."); *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court."); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus"). Accordingly, this issue is not preserved for habeas review on the merits.

> 2. Ground Two/Second Claim—double jeopardy and Ground Four—trial court's comments and alleged stereotyping of Petitioner

In Ground Two, Petitioner maintains the trial court judge "violated the double jeopardy provisions of both the federal and out state constitution" by allowing him to be convicted of two offenses—second-degree burglary and safecracking.[4] ECF No. 1 at 7. In Ground Four Petitioner alleges that that the trial court judge interjected his personal opinion and stereotyped Petitioner. ECF No. 1 at 10. Respondent argues that these allegations of trial court error are not reviewable. ECF No. 17 at 19. Specifically, Respondent argues these habeas Grounds "would have to have been asserted at the trial level and then raised on direct appeal, which was not done in this case." *Id.* Neither of these issues were raised during Petitioner's criminal trial or on direct appeal. Therefore, they are not preserved for habeas review. *See, e.g. Pickard v. Connor*, 404 U.S. at 278; *Baker v. Corcoran*, 220 F.3d at 288; *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL

---

[4] Petitioner raises the same allegation directed to trial counsel. That allegation will be addressed later in this Report under Petitioner's ineffective-assistance-of-counsel claims.

3052487, at *13. As a result, the undersigned finds that the second claim in Ground Two and Ground Four should be dismissed.

3. Ground Three—denial of directed verdict based on statutory definition of "safe"

In Ground Three, Petitioner maintains the trial court erred in not granting his motion for a directed verdict concerning safecracking because a wooden filing cabinet does not qualify as a "safe." ECF No. 1 at 8. Further, in Ground Three, Petitioner argues that the applicable statute is overly broad and does not give one any notice of what a safe is. *Id.* Respondent maintains Ground Three was not raised during Petitioner's criminal trial and is therefore not a reviewable habeas ground. ECF No. 17 at 19-20.

At the close of the State's case, Petitioner's trial counsel moved for a directed verdict on the safecracking and second-degree burglary charges. App. 113. Specifically, trial counsel argued:

> I'd like to make a motion for a directed verdict based *on the evidence provided so far*. As to the safecracking, they haven't shown that the safe actually had anything in it. There just hasn't been enough evidence provided by the prosecution, on both, for that matter. I move for a directed verdict on both charges.

*Id.* (emphasis added). The trial court denied trial counsel's motion for a directed verdict based on the sufficiency of the evidence presented by the State. App. 113-14. The trial court never considered whether the filing cabinet qualified as a "safe" under the statute or whether the safecracking statute was overly broad. Therefore, though Ground Three was raised in Petitioner's *Anders* brief, *see* App. 170-77, it was not preserved for appellate review because it was not raised to and ruled upon by the trial court. Therefore, the undersigned finds that Ground Three should be dismissed for failure to exhaust. *See, e.g. Pickard v. Connor*, 404 U.S. at 278; *Baker v. Corcoran*, 220 F.3d at 288; *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13.

B.  Merits Review of Remaining habeas Grounds

1.  <u>Ground One (a); (b); (d)</u>: Ineffective Assistance of Counsel for (a) Failure to call and present a witness who would have allegedly provided favorable testimony (b) Failure to consult a safe-cracking expert; (d) Failure to adequately investigate the case.

In his first Ground, Ground One (a), Petitioner contends that he was denied effective assistance of trial counsel because trial counsel failed to present a favorable witness at trial. ECF No. 1 at 5. Specifically, Petitioner maintains his trial counsel failed to interview "James Gates"[5] as a potential witness. ECF No. 1-2 at 4. Additionally, in Ground One (b), Petitioner maintains his trial counsel was ineffective for failing to consult a safe-cracking expert. ECF No. 1 at 5; ECF No. 1-2 at 4. Finally, in Ground One (d), Petitioner alleges trial counsel failed to adequately investigate his case. ECF No. 1 at 5. Specifically, Petitioner maintains trial counsel failed to investigate the State's lack of forensic evidence limited to DNA and fingerprints. ECF No. 1-2 at 4. Further, Petitioner argues that "criminal defense attorneys have a duty to undertake a reasonable investigation of which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." *Id.*

Concerning Ground One (a), (b), and (d), Respondent argues Petitioner cannot show the PCR court either made an unreasonable determination of the facts or unreasonably applied federal law in denying relief upon these claims. ECF No. 17 at 23-27; 29-31. Moreover, concerning Ground One (a), Respondent maintains that Petitioner failed to establish trial counsel was ineffective in not presenting testimony from "Mr. Grey." *Id.* at 24. Concerning Ground One (b), Respondent maintains during PCR, trial counsel testified that an expert would not have assisted the jury. *Id.* at 26. Further, Respondent argues that Petitioner did not present testimony

---

[5] Petitioner identifies the potential trial witness as James Gates in his Petition. ECF No. 1-2 at 4. However, at the PCR hearing Petitioner identified the witness as James Grey. App. 215.

from a safe-cracking expert during the PCR hearing, and therefore did not establish prejudice. *Id.* at 27. Finally, concerning Ground One (d), Petitioner maintains "Petitioner did not present testimony or evidence that could have been presented had trial counsel done a more thorough investigation at the PCR hearing." *Id.* at 30. Therefore, Respondent argues all these Grounds should be dismissed with prejudice. *Id.* at 31.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

During his PCR hearing, Petitioner testified that James Grey hired him to work at Moon's Tile, and he was helping load trucks in the middle of night for a tile job being done at night at Clemson University. App. 218. Petitioner testified he told his trial counsel about James Grey, "the guy that worked for Moon's Tiles. . .the guy that actually had me to be there. . ." App. 215. Petitioner testified that trial counsel told Petitioner he would contact and speak with Grey, but trial counsel "never called the guy to be in court for a witness or anything." *Id.* Though Petitioner thought Grey would provide favorable testimony for his defense, Petitioner testified: "I don't know what he would have said. . ." *Id.* When asked again about the content of Grey's testimony,

Petitioner testified: "I couldn't tell you exactly what he would have said, but he would have come to court if [trial counsel] had did what he said he was going to do." App. 216. Later, Petitioner agreed that Grey would have testified that on the night of the crime, Petitioner was just at the location in order to work. App. 218-19; 220. Concerning the safe-cracking expert, Petitioner testified that there was no way anyone could crack open a safe in a minute or two. App. 216. Additionally, Petitioner testified that the "expert would have showed that that knife, or whatever they said that I had, would not have been the thing that would have opened the safe." App. 217.

Regarding trial counsel's investigation of the case, Petitioner testified that no DNA evidence or fingerprints incriminated him. App. 219. Further, Petitioner testified that his trial counsel should have discovered and disclosed that Petitioner was lawfully at work during the commission of the crime and was only looking for a clipboard. App. 220. Petitioner testified he met with trial counsel twice before trial and spoke to him on the phone. App. 225. Petitioner agreed that trial counsel showed him the State's video before trial but did not review Mr. Moon's statement with him before trial. App. 226. Concerning the burglary charge against him, Petitioner admitted, "hey, I was there. I can't deny the burglary. Yes, I did go in there. But for the safe, I did not mess with no safe." App. 228.

Turning to trial counsel's PCR testimony, when questioned about James Grey, trial counsel testified that he did not recall Petitioner telling him he wanted trial counsel to interview James Grey. App. 233. Trial counsel testified that had Petitioner made this request that his file would have reflected it. *Id.* Further, trial counsel specifically testified that Petitioner did not ask him to investigate any potential witnesses. *Id.* From his recollection, trial counsel testified the State's evidence against Petitioner was "strong," and the State had "two eye witnesses and it was

on video." *Id.* Concerning a safe-cracking expert, trial counsel testified he did not recall Petitioner requesting one. App. 238. Trial counsel testified that he did not think an expert would have helped the jury because he "didn't think a safecracking expert would have had anything to do with the jury knowing how to get into a safe." *Id.*

Trial counsel testified that he met with Petitioner at least four times before trial and had several phone calls with Petitioner. App. 232. Counsel testified that at the start of a case he "create[s] a letter of representation; a discovery motion; Rule 5 certificate of service; and send that out to the court, as well as the Solicitor's Office, and keep a copy for my file." App. 231-32. Additionally, trial counsel testified that he then sets up an initial meeting with his clients to get their side of the story and keeps them involved in their case. App. 232. Additionally, trial counsel testified that he visited the crime scene and made sure he understood where everything was. App. 239. Trial counsel testified that he advised Petitioner on several occasions that he should take the State's plea offer of five-years for the burglary charge and a dismissal of the safe-cracking charge. App. 234. In terms of a trial strategy, trial counsel testified that he did not think the State's evidence concerning the safe-cracking charge was strong and they "could attack the lack of evidence and conflicting – possibly conflicting statements or confusing statements by the eye witnesses." App. 235. As to the burglary charge, trial counsel testified that their strategy was to attack intent—that though the video recording showed Petitioner was present at the crime scene, he did not have intent to commit a crime. *Id.* Trial counsel testified that he discussed "exposure" and the elements of the charges against him with Petitioner. App. 236. Finally, trial counsel testified that he tried Petitioner's case to the best of his ability. App. 237.

The undersigned agrees with the PCR court's finding that trial counsel did not err in failing to interview Mr. Gates/Grey as a witness, consult a safecracking expert, or investigate

Petitioner's case. *See* App. 248. On these issues, the PCR court found trial counsel's testimony concerning these allegations was "dispositive." *Id.* In particular, the undersigned notes the PCR court's finding that Petitioner "failed to produce any relevant and credible testimony or evidence concerning [these three] allegations." *Id.* Accordingly, the PCR court dismissed these three allegations with prejudice. The undersigned has reviewed the trial transcript and finds that based on the evidence against Petitioner, no omitted testimony was likely to have had an effect on the outcome of Petitioner's criminal trial. Accordingly, the undersigned finds Petitioner has failed to demonstrate either *Strickland* prong.

The undersigned finds that the PCR court's dismissal of Petitioner's claims of ineffective assistance of counsel was not an unreasonable application of federal law. Therefore, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground One (a), (b), and (d) are without merit and should be dismissed.

      2.   Ground One (c)—Ineffective Assistance of Counsel for failing to request a mere presence jury charge.

In Ground One (c) Petitioner maintains his trial counsel was ineffective for failing to request a mere presence jury charge. ECF No. 1 at 5. In his PCR testimony, Petitioner maintains that he was at the crime scene because James Grey hired him to go to work there. App. 218. Respondent maintains that Petitioner cannot show the PCR court's denial of relief was the result of an unreasonable determination of the facts nor can Petitioner demonstrate that the PCR court unreasonably applied federal law in denying relief upon this claim. ECF No. 17 at 27-29. Additionally, Respondent argues that Petitioner was not charged with possession of contraband

and his case did not fall within one of the two circumstances in which a mere presence charge is normally warranted. *Id.* at 29.

When determining the merits of this issue, the PCR court found Petitioner's allegation that trial counsel should have requested a mere-presence jury charge was meritless. App. 251. The PCR court found that Petitioner failed to demonstrate that a mere presence instruction would have called into question the outcome of his trial and that the State's evidence of Petitioner's guilt was overwhelming "as he was caught in the act." *Id.* The transcript from the PCR hearing accurately reflects the PCR court's findings. Trial counsel Angell testified that he did not believe mere presence was applicable to Petitioner's case. App. 236-37. Further, trial counsel testified that had Petitioner only been at the crime scene for work, then the mere presence charge may have been applicable, but that was not Petitioner's story. App. 238-39. Rather, trial counsel testified that Petitioner told him that he went to the crime location "to get some money for a buddy. . .not that he was working or doing any employment." App. 239.

Turning to the merits of this habeas ground, the undersigned finds that Petitioner cannot show the PCR court unreasonably applied federal law or unreasonably applied the facts in denying relief upon this claim. Under South Carolina law, a mere presence jury charge is appropriate in two instances. First, "if there is a doubt over whether the defendant is guilty as an accomplice to a crime, the trial court may be required to instruct the jury that mere presence at the scene is insufficient to find the defendant guilty as an aider or abettor. *State v. Stokes*, 528 S.E.2d 430, 434 (S.C. Ct. App. 2000). "Second, in cases where the defendant is charged with possession of contraband as a result of being present where contraband was found, the court may be required to charge the jury that the defendant cannot be found guilty of possession of contraband by being merely present near it." *Id.* at 434–35. Though it is not the province of this

court to interpret South Carolina law, neither circumstance applies in this situation because Petitioner was not charged as an aider or abettor and was not charged with possession of contraband. Therefore, Petitioner's trial counsel did not err in failing to request a jury charge on mere presence. Additionally, the undersigned finds no prejudice resulted from the alleged error. Moreover, the PCR court found that trial counsel's testimony was very credible, and Petitioner's testimony was not credible. App. 246-47. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, habeas Ground One (c) should be dismissed.

>    3. Ground One (e)—Ineffective Assistance of Counsel for failing to object to certain comments.

In Ground One (e), Petitioner maintains his trial counsel was ineffective for failing to object to certain comments. ECF No. 1 at 5.[6] During the PCR hearing, Petitioner testified that his trial counsel was ineffective for failing to object to the trial court's revocation of his bond during his criminal trial. App. 220-21. Petitioner testified that he paid his bond and did not "revoke" it when he "was out there on the street. My bond lady I called every week." App. 222. Further, Petitioner felt the trial court prejudiced him by commenting that he was revoking Petitioner's bond because in prior situations where he did not revoke a defendant's bond, the defendant absconded or "left during trial." App. 223.

On this issue, Petitioner's trial counsel testified that by the time he was appointed, Petitioner was out on bond. App. 234. Further, trial counsel testified that the trial court has the

---

[6] In the memoranda attached to his Motion, Petitioner argues his trial counsel erred in failing to object to investigator Pridemore's testimony. ECF No. 1-2 at 7. This specific error was not raised in Petitioner's PCR application, App. 197-98, nor ruled on by the PCR court, *see* App. 242-52. Therefore, it is not preserved for habeas review.

discretionary authority to revoke a defendant's bond and that the revocation was "typical protocol in a case such as this." App. 237. Trial counsel testified that he knew Petitioner did not want his bond to be revoked, and he told the trial court his client's wishes but did not object to the revocation once the trial court made the decision. *Id.*

During his criminal trial, the trial court noted Petitioner's prior record and indicated concern about Petitioner "being out overnight." App. 123. Thus, the trial court revoked Petitioner's bond indicating, "I'm going to have you spend the night in the county jail tonight, because I want to make sure you come back to trial tomorrow and finish up here." *Id.* It appears the trial court made this decision on the record but outside the presence of the jury. App. 118-124.

Initially, the undersigned questions whether this is a reviewable habeas ground because even if the undersigned finds the trial court erred, it would not result in a recommendation concerning Petitioner's current sentence and conviction. Furthermore, a bond revocation does not concern application of federal law. Even if this ground is reviewable, the undersigned finds that trial counsel did not err in failing to make an objection to the trial court's revocation on the record. It appears trial counsel expressed Petitioner's wishes to not have the bond revoked while in chambers. Further, after the trial court revoked Petitioner bond, Petitioner began to speak by saying "I thought that - - ," and the trial court responded, "It's not up for debate. . ." App. 123-24. Therefore, had trial counsel made an objection, it clearly would have been futile. Accordingly, the undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Therefore, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground One (e) is without merit and should be dismissed.[7]

4. Ground Two—Ineffective Assistance of Counsel for failing to raise double jeopardy.

In his first claim in Ground Two Petitioner contends his trial counsel was ineffective in failing to argue against double jeopardy because he was convicted of both burglary and safecracking. ECF No. 1 at 7; ECF No. 1-2 at 4. Petitioner argues that the double jeopardy test is whether each provision requires proof of a fact which the other does not. ECF No. 1-2 at 4. When asked about the double jeopardy allegation during his PCR hearing, Petitioner testified that the State did not have evidence against him for the safecracking charge, and he just wanted the same five-year sentence that his co-defendant got. App. 222. Petitioner protested to being sentenced to 15-years imprisonment for both burglary and safecracking. *Id.* Petitioner's trial counsel testified he did not see double jeopardy as a potential issue. App. 237.

Respondent argues Petitioner cannot show that the PCR court unreasonably applied *Strickland* and cannot demonstrate that trial counsel was deficient. ECF No. 17 at 37. Specifically, Respondent argues: "Trial counsel was correct in finding there was no double jeopardy issue presented by the fact that Petitioner was charged with second-degree burglary and safecracking at the same time." *Id.* The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction and protects against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161 (1977). In the case of *Blockburger v. United States*, the Supreme Court held that to establish whether double jeopardy

---

[7] In Ground One (f) Petitioner contends his trial counsel was ineffective in failing to object to double jeopardy. ECF No. 1 at 5. The undersigned will address Petitioner's double jeopardy allegation in Ground Two.

applies: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. 284 U.S. 299, 304 (1932). Further, the Court found that "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* (internal citation omitted).

Here, Petitioner was indicted and convicted of second-degree burglary and safecracking. Petitioner's indictments specifically indicated that Petitioner had violated sections 16-11-312(B) and 16-11-390 of the South Carolina Code. App. 253-256. Each of these code sections defines the two charges differently. Second-degree burglary is defined pursuant to section 16-11-312 of the South Carolina Code:

> (A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.
> (B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:
> (1) When, in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
> (a) Is armed with a deadly weapon or explosive; or
> (b) Causes physical injury to any person who is not a participant in the crime; or
> (c) Uses or threatens the use of a dangerous instrument; or
> (d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or
> (2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
> (3) The entering or remaining occurs in the nighttime.

Section 16-11-390 of the South Carolina Code concerning safecracking indicates: "It is unlawful for a person to use explosives, tools, or any other implement in or about a safe used for keeping money or other valuables with intent to commit larceny or any other crime."

Regarding this issue, the PCR court, citing to *Blockburger*, found that "Petitioner's convictions do not constitute a double jeopardy violation [because] [t]he offences do not share identical elements." App. 250. As Respondent articulates, there are elements of each crime that require proof of a fact that the other does not. Therefore, the undersigned finds that trial counsel was not ineffective for failing to raise the issue of double jeopardy because Petitioner was charged and convicted of separate and distinct crimes. Accordingly, the undersigned finds that the PCR court did not err in its application of *Strickland* or unreasonably apply federal law to the facts of this case. As a result, the undersigned finds that Ground One (f) and Ground Two are without merit and should be dismissed.

### 4. Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 17, be GRANTED and the Petition be DENIED. Based on this recommendation, the undersigned also recommends denying Petitioner's Motion to Vacate his criminal case based on a summary court dismissal of a trespassing charge. *See* ECF No. 23; 23-1.

IT IS SO RECOMMENDED.


August 14, 2017                                             Kaymani D. West
Florence, South Carolina                                   United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**